Anthony A. CALDERONE, Clark Horn-
baker, Plaintiffs-Counterclaim
Defendants-Appellees,

v.

UNITED STATES of America,
Defendant-Counter-Claimant-Appellant.

No. 85–1493.

United States Court of Appeals,
Sixth Circuit.

Argued July 18, 1986.
Decided Sept. 2, 1986.

flows from a decision to use narcotics. Such a decision was, at least initially, voluntary.

Joel M. Shere, L. Michael Wicks, Detroit, Mich., David S. Grossman, Tax Div., U.S. Dept. of Justice, Washington, D.C., Michael L. Paup (Lead Counsel), Glenn L. Archer, Jr., Wynette J. Hewett, Martha B. Brissette argued, for defendant-counter-claimant-appellant.

Walter J. Murray argued, Theresa M. Carbott, Southfield, Mich., John C. Augustine argued, Austin, Tex., for plaintiffs-counterclaim defendants-appellees.

Before: LIVELY, Chief Judge; MILBURN, Circuit Judge; and PECK, Senior Circuit Judge.

MILBURN, Circuit Judge.

Defendant/Counterclaimant United States of America appeals from the district court's grant of summary judgment in favor of plaintiffs Anthony Calderone and Clark Hornbaker in this action involving Internal Revenue Service assessments under I.R.C. § 6672(a)[1] against plaintiffs for social security taxes withheld from wages paid to corporate employees of Calderone-Curran Ranches, Inc. for the six-month period February through July of 1975. In granting summary judgment, the district court held (1) that the government failed to meet its burden to prove that Hornbaker was a "responsible person" under the statute; (2) that although Calderone was a "responsible person," he did not "willfully" fail to see that the corporation paid the taxes; and (3) that IRS Policy Statement P–5–60 requires the government to seek collection of the taxes from the corporate assets of the employer before assessing responsible officers. Because the district court misapplied IRS Policy Statement P–5–60, erred in assigning the burden of

proof, and, more importantly, because disputed genuine issues of material fact are present, we reverse and remand.

### I.

Taken in the light most favorable to the government, the party who defended against the motion for summary judgment, see, e.g., Bosely v. City of Euclid, 496 F.2d 193, 197 (6th Cir.1974), the facts are as follows:

In 1968, Anthony Calderone and John Curran formed Calderone-Curran Ranches, Inc., a Michigan corporation, to raise and sell purebred cattle. Calderone served as president, general manager, treasurer, and chairman of the board of directors of the corporation from its inception until his resignation in August, 1975. As president and general manager, Calderone had the authority to hire and fire corporate employees, as well as the authority to direct which creditors of the corporation would be paid and when they were to be paid. Calderone possessed and exercised the authority to sign checks on the corporation's various bank accounts.

In 1972, Calderone hired Hornbaker, a certified public accountant, to serve as controller of the corporation. Hornbaker was eventually promoted to vice-president of finance, a title he retained until he was fired by Calderone on August 1, 1975. As vice-president of finance, Hornbaker had the authority to hire and fire corporate employees within his department. It is undisputed that at least until the "early" part of 1975, Hornbaker was responsible for managing the financial and accounting affairs of the corporation, including the filing and payment of federal employment taxes. In fact, Hornbaker signed a corporate check in April of 1975 to pay the corporation's delinquent social security taxes for 1974,

1. Section 6672(a) provides:

General rule.—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the

payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

which he deposed he was responsible for paying. Hornbaker, like Calderone, possessed and exercised the authority to sign checks on the corporation's bank accounts.

During 1974, the corporation began to experience financial difficulties due to the increasing costs of its operations. From February 1975 through July 1975, the corporation failed to pay over to the United States social security taxes withheld from its employees' wages. Notwithstanding the general deterioration of the corporation's financial condition, the bank statements for the company's general account during the relevant period indicated that checks were written to other creditors, including Calderone, in amounts more than sufficient to satisfy the withholding taxes involved here.

On August 7, 1975, the corporation filed a Chapter 11 petition for bankruptcy. The trustee in bankruptcy made a distribution in the amount of $5,156.02 to the government from the bankruptcy estate in partial payment of the corporation's delinquent social security taxes. The United States filed a claim in the bankruptcy proceeding for the balance of the unpaid social security taxes owed by the corporation. Distribution of the bankruptcy estate has since been delayed by fraud litigation concerning the corporation's only substantial assets, fixed term notes receivables.

On March 30, 1981, the IRS made a section 6672 assessment against Calderone for the taxes withheld from the wages paid to corporate employees from the period February to July 1975, totaling some $20,-288.04. Calderone paid $43.86, representing a divisible portion of the withheld social security taxes and filed a claim for refund. His claim was denied, and on September 8, 1982, he filed a refund suit in the United States District Court for the Eastern District of Michigan. The United States filed a counterclaim for $20,244.18, plus interest, the balance of the assessment.

On April 26, 1982, the IRS made a similar section 6672 assessment against Hornbaker. On January 4, 1983, Calderone and the government agreed by stipulation to the addition of Hornbaker as a defendant on the counterclaim of the United States, and the government filed an amended answer and counterclaim asserting that Calderone and Hornbaker were jointly and severally liable for the withholding taxes. Thereafter, on February 4, 1983, Hornbaker filed suit in the United States District Court for the Western District of Texas seeking a refund of the $112.32 which he had paid in partial satisfaction of his section 6672 assessment. The Texas district court transferred Hornbaker's case to the Eastern District of Michigan where it was consolidated with the action brought by Calderone.

The parties filed countermotions for summary judgment. While the motions were pending, Calderone and Hornbaker sought a stay on the ground that they expected the taxes to be satisfied by a distribution from the bankruptcy estate of the corporation. The action was stayed for one year, until November 1984. After the expiration of the one-year stay, a hearing was held on the parties' countermotions for summary judgment. At the conclusion of the hearing, the trial court announced its opinion from the bench, ruling in favor of Calderone and Hornbaker. Additional facts will be discussed below.

## II.

### A. *IRS Policy P–5–60.*

Before turning to the arguments unique to each plaintiff, we will address the district court's holding "[t]hat the Government has the obligation to look first to the corporate assets of Calderone-Curran Ranches, Inc...." The district court based this statement on *Policies of the IRS Handbook* P–5–60 (approved 6–2–77), which provides in relevant part:

> If a corporation has willfully failed to collect or pay over employment taxes, ..., the 100–percent penalty will be asserted against responsible officers and employees of the corporation only if such taxes cannot be collected from the corporation itself.

Plaintiffs also rely on the following "quote" from *McCarty v. United States*, 437 F.2d 961, 194 Ct.Cl. 42 (1971):

> The test for liability under § 6672 is not whether the corporate obligation has been met, but whether the taxes *cannot be* or *could not be* collected and whether *there are no tangible assets against which distraint can be made.*

Calderone's Brief at 20 (adopted by Hornbaker) (purporting to quote 437 F.2d at 972) (emphasis by the court).

Plaintiffs have blatantly misquoted the court of claims by inserting the phrase "for liability under § 6672," which does not appear in the opinion. Rather, the court of claims stated: "A careful reading of the portions of the memorandum quoted above shows that the test is not whether the corporate obligation...." Plaintiffs' misquote cannot be considered an excusable misstatement of the court's actual holding. The court clearly was not referring to the test "for liability under § 6672." Rather, the court was unambiguously referring to IRS Internal Memorandum No. 56–46, dated April 9, 1956, which was a policy statement similar to Policy P–5–60. Moreover, the court was not setting forth a "test *for liability*" but rather was interpreting the internal memorandum. Counsel should take this as a warning that such misrepresentations to this court will not be tolerated.

In any event, *McCarty*, as distinguished over the years, does not stand for the broad proposition asserted by plaintiffs. In *McCarty*,

> a corporation officer was held not to be subject to the penalty assessment where the IRS, after placing tax liens on the corporation's assets, failed, subsequent to the Navy's taking over the management and control of the company under a V-loan guarantee agreement, to enforce the liens and otherwise to collect the delinquent withholding taxes from such assets despite a prior agreement between the corporation and the IRS, which the Navy knowingly breached, to pay such delinquent taxes in monthly installments.

The IRS specifically agreed with the Navy that the tax indebtedness would be subordinate to the Government loans.

*Burack v. United States*, 461 F.2d 1282, 1297, 198 Ct.Cl. 855 (1972) (restating facts in its prior *McCarty* opinion). As has been observed:

> The facts in *McCarty* are particularly egregious: one arm of the government was responsible for the breach of an agreement with another arm of the government, and then the government decided to go after an individual who was not at all responsible for the breach of the agreement.

*Cooper v. United States*, 539 F.Supp. 117, 122 (E.D.Va.1982) (refusing to apply *McCarty* where there was no showing that the Government prevented the responsible persons from discharging their obligation to pay over the withheld taxes), *aff'd without opinion*, 705 F.2d 442 (4th Cir.1983).

We believe that, as was done in *Cooper*, *McCarty* should be restricted to its facts, *viz.*, to situations where the government somehow prevents the responsible persons from paying over the taxes. Moreover, the statute itself

> does not include any requirement that the government exercise "due diligence" in its collection efforts against the employer corporation. "The personal liability created under Section 6672 is separate and distinct from that imposed upon the employer under Section 3403 of the Code. The Service need not have attempted to collect from the employer before assessing a responsible person under Section 6672."

*Cooper*, 539 F.Supp. at 121 (quoting *Datlof v. United States*, 370 F.2d 655, 656 (3d Cir.1966), *cert. denied*, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624 (1967) (citations omitted)). *Accord Hornsby v. IRS*, 588 F.2d 952, 954 (5th Cir.1979).

■ Thus, since *McCarty* is distinguishable and the statute does not require the result plaintiffs urge, the question becomes whether the IRS policy of pursuing the assets of the corporation first prevents it from assessing the penalty in the present

case. We believe it does not. First, no plausible argument can be made that plaintiffs relied on that policy to their detriment. Second, the IRS has, in fact, attempted to collect from the corporation by filing a claim in the bankruptcy proceeding for the unpaid taxes. However, that litigation is still pending after some ten years. As the government points out, if P–5–60 is interpreted as an absolute requirement that the government exhaust its collection efforts against the corporation prior to assessing responsible persons, the opportunity to collect the taxes may be forever lost. This is because it is possible that the bankruptcy estate will be insufficient to pay the taxes while the statute of limitations may run on the responsible parties. The IRS should be allowed to attempt to avoid such a result.[2]

We also note that:

[T]he Government is entitled, . . . , only to one satisfaction of the payroll tax liability; once the Government has obtained a single satisfaction, it must abate all 100–percent penalty assessments which have arisen from the payroll tax liability. When the Government seeks satisfaction of the payroll tax liability vis-a-vis an assertion of 100–percent penalty assessments, it is entitled to "choose the liable parties from whom it will collect."

*Gens v. United States*, 615 F.2d 1335, 1339–40, 222 Ct.Cl. 407 (1980) (citations omitted) (quoting *Abrams v. United States*, 333 F.Supp. 1134, 1147 (S.D.W. Va.(1971)). To this end, P–5–60 provides that "[w]hen court proceedings are involved, an abatement of the tax assessment against the corporation will be made to the extent that the related 100–percent penalty assessment is paid. . . ." Thus, the policy statement itself contemplates that in some cases the IRS will seek payment from others at the same time it is seeking collection from the corporation.[3] Thus, read in its entirety, P–5–60 does not support plaintiffs' position.

## B. *Burden of Proof.*

Another preliminary matter involves the district court's placement of the burden of proof on the government. *See* App. at 407–08 ("the Government has the burden to prove that [Hornbaker] was a responsible person under the statute"); App. at 409 ("there is nothing here the Government has shown that would meet the burden of having evidence that would permit this case [against Calderone] to go further").

■ In *Sinder v. United States*, 655 F.2d 729, 731 (6th Cir.1981), this court stated:

When a party pays part of the penalty existing for failure to pay withheld taxes and the government counterclaims for the remainder of the refund, the taxpayer has the burden of proving that the assessment was wrong. The assessment is presumed to be correct. Therefore, the taxpayer has the burden of showing that he was not a responsible party on both the refund claim and the counterclaim.

. . . [T]he burden on the taxpayer is not merely a burden of producing evidence; it is a burden of persuasion by the preponderance of the evidence that the assessment is not correct.

Thus, the district court misallocated the burden of proof. Contrary to plaintiff Hornbaker's assertion, the burden of proof is not irrelevant to this case. As the government notes,

Rule 56(c) requires the moving party to show not only the absence of a disputed issue of fact but also that he is entitled to judgment as a matter of law. In assessing the sufficiency of the evidence

---

**2.** Plaintiffs' proffer at oral argument to waive the statute of limitations does not convince us otherwise. In deciding this issue we must look beyond the circumstances of this particular case. We leave to the agency the decision of whether to accept such offers.

**3.** This position has since been made clear through the revision of P–5–60 (approved 5–30–84), which now provides:

[T]he 100–percent penalty may be asserted against responsible officers and employees of the corporation, . . . , whenever such taxes cannot be *immediately* collected from the corporation itself. (emphasis supplied).

to sustain a particular inference, therefore, the court must also consider the burden of proof on the issue and where it will rest at trial. When the moving party does not have the burden of proof on the issue, he need show only that the opponent cannot sustain his burden at trial. *But where the moving party has the burden*—the plaintiff on a claim for relief or the defendant on an affirmative defense—*his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.*

W. Schwarzer, *Summary Judgment Under The Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 487–88 (1984) (emphasis supplied; citations omitted). As set forth below, the evidence of record cannot support a holding that no reasonable trier of fact could find other than for plaintiffs.

### C. *Summary Judgment for Calderone.*

We must now decide whether, bearing in mind that the burden of proof is on plaintiff and that the record must be read in the light most favorable to the government, the district court erred in finding plaintiff Calderone entitled to summary judgment. Calderone's position, accepted by the district court, is based on Calderone's assertion that on August 1, 1975, when he purportedly was first informed by then-controller Robert Kastens that the taxes were delinquent, he immediately ordered delivery of a corporate check in the amount of $33,545.24 for payment of the taxes.[4] Calderone submits that this testimony requires a finding that he did not willfully fail to pay the taxes. Calderone concedes that he is a responsible party.

A failure to pay over taxes is willful, for section 6672 purposes, if it is voluntary, knowing and intentional even though it is not done with a bad purpose or an evil motive....

One who pays other creditors, rather than pay withholding taxes to the government, is liable for a willful failure to pay such taxes....

*Barnett v. United States,* 594 F.2d 219, 222 (9th Cir.1979) (citations omitted); *accord McGlothin v. United States,* 720 F.2d 6, 9 (6th Cir.1983); *Braden v. United States,* 442 F.2d 342, 344 (6th Cir.), *cert. denied,* 404 U.S. 912, 92 S.Ct. 229, 30 L.Ed.2d 185 (1971).

The government presented evidence that during the relevant period, Calderone wrote some forty corporate checks to creditors while no payments were made on the social security taxes. In addition, Hornbaker deposed that Calderone requested that he sign a corporate check on April 18, 1975, made out to Calderone in the amount of $49,069.97, for payment on a lease of property from Calderone to the corporation. However, Calderone has asserted that the evidence demonstrates that prior to August 1, 1975, he had no knowledge the withholding taxes were not being paid.

The parties dispute whether it must be shown that the responsible party has actual knowledge of the nonpayment or whether willfulness also exists where a responsible person pays other creditors with a reckless disregard as to whether the trust fund taxes have been paid over to the government. There is authority to support the latter position, advanced by the government. In *Teel v. United States,* 529 F.2d 903 (9th Cir.1976), the court adopted the reasoning of the Second Circuit in *Kalb v. United States,* 505 F.2d 506 (2d Cir.1974), *cert. denied,* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975), that "for nonpayment to be willful there must be either knowledge of nonpayment *or reckless disregard* of whether the payments were being made." 529 F.2d at 905 (emphasis added). As the Court of Claims has stated:

More than mere negligence is required for "willfulness"; a person is not "willful" if as a result of negligence he is unaware of the default in the payment of payroll taxes.... But willful conduct

---

**4.** The government never received these funds because the bank upon which the check was drawn decided to set off the available funds in the corporation's general account against debts owed to it under a line of credit extended to the corporation by the bank.

may also include "a reckless disregard for obvious or known risks." ...

\*    \*    \*    \*    \*    \*

... At best, [the] argument amounts to the position that even with knowledge of a corporation's financial straits a responsible officer may immunize himself from the consequences of his actions by wearing blinders which will shut out all knowledge of the liability for and the nonpayment of its withholding taxes. But such a deliberate or reckless disregard of the facts and known risks cannot blunt the impact of the penalty statute on those responsible for such nonpayment. ...

*Bolding v. United States*, 565 F.2d 663, 672, 674, 215 S.Ct.Cl. 148 (1977) (citations omitted). Calderone has cited no cases which directly contradict these authorities. In the one case he cites, *Braden v. United States*, 442 F.2d 342 (6th Cir.), *cert. denied*, 404 U.S. 912, 92 S.Ct. 229, 30 L.Ed.2d 185 (1971), there was direct evidence that the responsible person was aware the taxes were due, owing, and unpaid. *Id.* at 344. Thus, the court was not presented with the issue raised here. It is true, as Calderone argues, that conduct amounting to no more than negligence is not willful for section 6672 purposes. The responsible person must have at least deliberately or recklessly disregarded facts and known risks that the taxes were not being paid. Moreover, we must bear in mind that Calderone has the burden of showing that he was not so reckless.

The government presented evidence that: Calderone was admittedly aware that the corporation had been in dire financial straights [sic] since 1974. He admitted that he checked on or was apprised of the corporation's accounts payable and accounts receivable on at least a weekly basis, and stated that he knew that "there was more dollars going out than were going in." (App. at 274–77; 304) He further admitted that he dealt personally with the corporation's creditors and made an effort to see that the payroll and the creditors necessary to continue the cattle-raising operations were being paid. (App. at 295–97) Although he could not recall having been specifically advised of any default in the payment of the employment taxes, he likewise admitted that he did not make any inquiry in this regard. (App. at 295).

Brief at 36.[5]

██ The above facts are sufficient to create a genuine issue of material fact as to whether Calderone was "aware," under the above authorities, prior to August 1, 1975, that the withholding taxes for February through July 1975 had not been paid. Moreover, there is also direct evidence that Calderone was actually aware, prior to August 1, 1975, that the taxes were not being paid. First, Hornbaker deposed that in early 1975 he discussed with Calderone the corporation's liability for the withholding taxes (App. at 336), that in the first part of July he asked Calderone if the taxes had been paid and Calderone replied that he would make sure they were paid (App. at 341–43), that after he (Hornbaker) tried to resign, he mentioned the tax obligations to Calderone (App. at 359), and that in July he talked to Calderone about the fact that the taxes needed to be paid (App. at 369–70).

Second, Kastens deposed that on August 1, 1975, Calderone called him into his office and told him to pay the payroll taxes, without having discussed the matter with him previously. App. at 387. This evidence directly contradicts Calderone's assertion that he first became aware the taxes had not been paid on August 1, 1975, when Kastens so informed him.

In conclusion, as to Calderone, disputed issues of material fact exist (1) as to wheth-

---

5. In deference to the district court, we note that the deposition of Calderone, cited above and *infra*, along with the deposition of Hornbaker, cited *infra*, were not before the court at the time it ruled on the motion for summary judgment.

However, this evidence was "on file," *see* Fed.R. Civ.P. 56(c), in light of the district court's order on September 4, 1985 "supplement[ing] and correct[ing]" the record by the filing of the depositions. App. at 253–54.

er prior to August 1, 1975, Calderone deliberately or recklessly disregarded the facts and known risks that the withholding taxes were not being paid; and (2) as to whether Calderone was actually aware that the taxes were not being paid. Should the fact finder hold against Calderone on these issues and further find that Calderone paid other creditors while "knowing" the taxes were not being paid, judgment for the government would be appropriate. Accordingly, as to Calderone, the district court must be reversed and the matter set for trial.

### D. *Summary Judgment for Hornbaker.*

As to Hornbaker, the district court held that he ceased being a "responsible person" prior to the relevant time period.[6] It bears repeating that the district court erroneously placed the burden on the government to prove that Hornbaker was a responsible person.

■ The district court's conclusion was based on Hornbaker's claim that in early 1975, as a result of the corporation's financial crisis, Calderone relieved him of his responsibility for the day-to-day financial affairs of the corporation and assigned him exclusively to the task of securing additional sources of outside financing for the company. Hornbaker implied that thereafter it was at least implicitly understood by him that Calderone would assume responsibility for the payment of the withholding taxes. However, the record shows the following interchange from the deposition of Calderone:

Q. Did there ever come a time when you redefined Clark Hornbaker's duties to include only obtaining financing to keep the corporation going? Did you ever relieve him of all his other responsibilities?

A. No, sir.

App. at 303. Thus, a disputed genuine issue of material fact exists as to whether Hornbaker was relieved of his responsibility to pay the withheld taxes.

In addition, Hornbaker deposed that in the latter part of July 1975, he told Kastens that he was resuming control over which of the corporation's creditors should be paid. App. at 342–43. Moreover, the government presented evidence that during the latter part of July, Hornbaker wrote some thirty corporate checks to creditors other than the United States.

Hornbaker counters with the assertion that he did not have authority to sign any check of any substance without going through Calderone as evidenced by the small number of checks he signed and the fact that they were of no great monetary value. However, the size of the check is not necessarily dispositive. *See Howard v. United States,* 711 F.2d 729, 734 (5th Cir. 1983) (authority is demonstrated by the fact that individual issued "small checks ... on a number of occasions.").

Hornbaker further argues that "[t]he test is not whether Hornbaker paid other creditors; the test is whether Hornbaker preferred other creditors over the United States with knowledge the withholding taxes were due." Brief at 8. Hornbaker misperceives the posture of his case. The test Hornbaker urges goes to the issue of whether the responsible person acted "willfully." *See supra* p. 260. However, the district court never reached this issue as to Hornbaker in light of its holding that he was not a responsible person. In determining whether an individual is a responsible person, check writing authority is indeed an appropriate factor to be considered:

One who has significant but not necessarily exclusive control over which bills should or should not be paid is a "responsible person." ...

Other court-developed criteria for identifying a "responsible person" [include] the identity of the individual who was in

---

6. As noted, Hornbaker has conceded that as to the 1974 taxes he was a responsible person. App. at 361. Given that he wrote the check in satisfaction of the company's tax liability in 1974, he could hardly dispute that status. Thus, the issue is whether Hornbaker ceased possessing such authority.

control of the financial affairs of the corporation....

*Cooper, supra,* 539 F.Supp. at 120; *see also Braden v. United States,* 318 F.Supp. 1189, 1194 (S.D.Ohio 1970) (ability of individual to sign checks of the corporation a factor to consider in determining responsible person), *aff'd,* 442 F.2d 342 (6th Cir.), *cert. denied,* 404 U.S. 912, 92 S.Ct. 229, 30 L.Ed.2d 185 (1971).

In conclusion, the evidence of record demonstrates a genuine issue of material fact as to whether Hornbaker ceased being a responsible person prior to the corporation's failure to pay over the withheld taxes. Accordingly, the decision of the district court granting summary judgment for Hornbaker must be reversed and the action remanded for trial.

### III.

For the foregoing reasons, the judgment of the district court is REVERSED, and this cause is REMANDED for further proceedings. However, we intimate no view as to the merits of this case.