**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0576n.06**
**Filed: August 11, 2006**

**No. 05-4217**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

JOHN H. HAROLD,

    **Plaintiff-Appellant,**

v.

UNITED STATES OF AMERICA,

    **Defendant-Appellee.**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

**BEFORE: MARTIN and SUTTON, Circuit Judges; JORDAN, District Judge.**[*]

    **LEON JORDAN, District Judge.** John H. Harold ("Appellant") appeals the grant of summary judgment in favor of the United States of America in this action involving Internal Revenue Service assessments under 26 U.S.C. § 6672(a). Although the district court in some respects erred in its application of the familiar summary judgment standard, these errors were harmless and we affirm.

---

[*] The Honorable R. Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

## I. *Facts*

Appellant has only a high school education.  From 1977 through 1987, he worked as the store manager of Bob's Sparkle Market ("Bob's Market") in Elyria, Ohio. Bob's Market, a local grocery, was owned by Appellant's father, Robert Harold, Sr. Appellant was responsible for doing "everything" at Bob's Market, including paying vendors, hiring employees, and "ma[king] sure the store ran efficiently."  He testified that his father, however, was responsible for the submission of Bob's Market's payroll taxes.

In 1987, Appellant transferred to his father's new Amherst, Ohio grocery, Harold's Sparkle Market ("Harold's Market"), to work as the store manager.[1]  Appellant testified that his responsibilities at Harold's Market were the same "basically" as at Bob's Market. He hired employees. He fired at least one person, with his father's approval. Appellant had check writing authority and signed checks written to suppliers, lenders, the State of Ohio Department of Taxation, and at least "some" checks to the IRS.  He approved payment of invoices.  He was an officer of Harold's Sparkle Market, Inc., serving as treasurer.

In the mid-1990's, a "Super K" grocery opened near Harold's Market, causing a gradual decline in sales.  In 1996, Appellant applied a substantial amount of his own funds to satisfy IRS and Ohio tax liens on *Bob's* (not *Harold's*) Market.  Also in 1996, Appellant wrote checks on the *Harold's* Market bank account to pay expenses of *Bob's* Market.

---

[1]  The assessments at issue apply to taxes owed by *Harold's* Market only.

Appellant testified that the bills of Harold's Market were paid "to my knowledge," but he admitted that by 1996 Harold's was behind in payments to its suppliers. Appellant testified that he "didn't know there was a tax issue [at Harold's Market] other than maybe a week or two . . . where the [tax] deposit was done a week later." When either accountant Sandra West or front office manager Wendy Biltz would inform him that "there wasn't enough money at that time to put in the payroll [tax account]," Appellant would tell them to "Do it tomorrow. That's what I would respond." Appellant acknowledged that Ms. West "emphasized" the importance of paying federal payroll taxes. Based on the tax problems he discovered in 1996 at *Bob's* Market, Appellant subsequently "always thought that was important[.]"

Appellant responded affirmatively when asked whether he knew "that as a matter of policy the IRS sends out notices when payroll taxes aren't being paid?" He recalled receiving and paying such notices at Harold's Market in 1996, at least up until October of that year:

Q: . . . did you ever receive mail from the IRS with respect to the payroll taxes of Harold's Sparkle Market?

A: Yes.

Q: . . . And that was because you were delinquent in paying the Harold's Sparkle Market payroll taxes, correct?

A: That's what the letter would have pertained to.

. . .

Q: . . . What did you do?

. . .

A: Paid them.

. . .

Q: And what did – do you recall now what you did to get them paid?

. . .

A: Personal accounts, general accounts, anything it took to get them paid I did.

Further, the affidavit of Ms. West confirmed that

In 1995 and 1996, Robert, Sr. and on some occasions, John Harold, would tell me about the notices they were receiving from the Internal Revenue Service about unpaid payroll taxes for both Bob's Market and Harold's Market. I informed both Robert, Sr. and John, that it was important to pay the payroll taxes. From these conversations in 1995 and 1996, it was clear that both John and Robert, Sr., were aware that their stores were having financial and tax problems.

At his deposition, Appellant was questioned regarding Ms. West's affidavit.

Q: If Sandy West were to state that she in fact had conversations with you about the delinquent federal payroll taxes at Harold's Sparkle Market, would she be incorrect?

A: I don't know.

Q: You couldn't say that she was wrong then; is that what you're saying?

A: Yes.

In 1996, Appellant reduced expenses, including inventory and employee hours, in response to Harold's Market's decreasing sales. He knew in 1996 that checks written on the store account were being returned for insufficient funds. He testified that he began monitoring the expenses of Harold's Market to be sure that they stayed below a certain percentage of total sales, because "that's what the manager is, you got to keep these guidelines."

Appellant's father died in January 1997. Appellant continued to manage Harold's Market for one or two months until the grocery was closed. At a meeting in February 1997, Appellant, his stepmother, his brother, and two attorneys made "a joint decision" to close Harold's Market. In Appellant's own words, "I closed the Harold's Sparkle Market." He "sold the inventory down" and transferred between $60,000.00 and $80,000.00 of merchandise to Bob's Market. At his deposition, Appellant acknowledged that after receiving the inventory proceeds he "assumed" that no payroll taxes were owed to the IRS.

Q: So you liquidated Harold's Sparkle Market . . . and you received approximately 60 to $80,000?

A: Right. And in my mind then when I did that everybody was paid because we had a good inventory.

. . .

Q: But at the time you liquidated . . . Harold's Sparkle Market, what did you do to make sure that the payroll taxes for Harold's Sparkle Market were being paid or had been paid?

A: I assumed they were paid. I did nothing.

Approximately two years later, Appellant received a letter from the IRS indicating that $17,000.00 in payroll taxes were owed by Harold's Market. He did not initially respond to the letter because he assumed that his father's estate would pay the bill.

## II. *26 U.S.C. § 6672(a)*

The Internal Revenue Code provides in material part:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to [sic] a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a). An individual subject to personal liability under § 6672(a) is termed a "responsible person." *See Slodov v. United States*, 436 U.S. 238, 246 n.7 (1978). "Liability attaches if an individual meets two requirements. He must be a 'responsible

person' under the statute, and he must 'willfully' fail to pay over to the government the amount due." *Gephart v. United States*, 818 F.2d 469, 473 (6th Cir. 1987).

A corporation can have more than one "responsible person" and, "[g]enerally, such a person is one with ultimate authority over expenditure of funds since such a person can fairly be said to be responsible for the corporation's failure to pay over its taxes, or more explicitly, one who has authority to direct payment of creditors." *Id.* (internal quotations omitted). As for § 6672(a)'s "willfulness" requirement, "conduct amounting to no more than negligence is not willful for section 6672 purposes. The responsible person must have at least deliberately or *recklessly disregarded facts and known risks* that the taxes were not being paid." *Calderone v. United States*, 799 F.2d 254, 260 (6th Cir. 1986) (emphasis added).

> Taxes withheld from the wages of an employee are held by the employer in trust for the government. These trust fund taxes are for the exclusive use of the government and cannot be used to pay business expenses of the employer, including salaries. It is no excuse that, as a matter of sound business judgment, the money was paid to suppliers and for wages in order to keep the corporation operating as a going concern – the government cannot be made an unwilling partner in a floundering business.

*Collins v. United States*, 848 F.2d 740, 741-42 (6th Cir. 1988) (citations omitted). Appellant bears the burden of proving that he was not a responsible person and/or that he did not act willfully. *Kinnie v. United States*, 994 F.2d 279, 283 (6th Cir. 1993).

### III. *Procedure*

On August 3, 1998, the IRS assessed against Appellant personally a $24,624.97 trust fund recovery penalty pertaining to unpaid payroll taxes of Harold's Market for the last two quarters of 1996 and the first quarter of 1997. After the IRS withheld his and his wife's year 2000 tax refunds and applied them to the assessed penalty, Appellant filed suit in the United States District Court for the Northern District of Ohio. He sought judgment in the amount of the retained refunds along with abatement of the remaining penalty. The United States counterclaimed for judgment equal to the unsatisfied assessment plus interest.

The parties consented to have all proceedings conducted before a magistrate judge. On July 21, 2005, the magistrate granted summary judgment in favor of the government, concluding that there was no genuine issue of material fact either as to: (1) whether Appellant was a "responsible person"; or (2) whether Appellant "willfully" failed to submit the payroll taxes. The magistrate then entered judgment in favor of the United States in the amount of "$36,042.00 plus statutory additions and interest[.]"

IV. *Standard of Review*

We review a grant of summary judgment *de novo*. *Bell v. United States*, 355 F.3d 387, 391 (6th Cir. 2004). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In order to defeat a motion for summary judgment, the non-moving party must present significantly probative evidence in support of his complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-movant's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, a non-movant may not create a genuine issue of material fact merely by contradicting his own testimony. *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).

## V. *Analysis*

Appellant contends that he "was nothing more than a store manager, for a business run by his father. . . . [and] simply did not have the requisite authority sufficient to raise his position to that of a 'person responsible' under 26 U.S.C. § 6672(a)." He further argues that he could not have "willfully" failed to remit withholding taxes because he "had no authority to . . . pay corporate obligations, and did not even know what the obligations were." In support of his position, Appellant cites various factual findings whereby the

magistrate judge allegedly failed to construe disputed material evidence in the light most favorable to him.

## A. Responsible Person

The test for determining responsibility under § 6672(a) focuses on "the degree of influence and control which the person exercised over the financial affairs of the corporation and, specifically, disbursements of funds and the priority of payments to creditors." *Gephart v. United States*, 818 F.2d 469, 473 (6th Cir. 1987). Relevant facts to consider include: (1) the person's corporate duties; (2) his check-signing authority; (3) whether he was an officer of the corporation; (4) whether he had authority to hire and fire; and (5) "the identity of the individuals who were in control of the financial affairs of the corporation." *Id.*

As noted, a corporation can have more than one "responsible person" under § 6672(a). *Id.* Responsibility is a function of significant, rather than absolute, control. *Id.* at 475. The statute "encompasses all those who are so connected with a corporation as to have the responsibility and authority to avoid the default[.]" *Id.* at 476 (citation omitted).

As to the magistrate judge's opinion, Appellant first attacks the conclusion that he had the authority to hire and fire employees. This criticism is without merit. Appellant acknowledged that he "would hire clerks." He also fired at least one employee, with his father's approval. Appellant's partial firing authority is sufficient. Again, § 6672(a) does not

require that a responsible individual "have the final word." *Id.* at 472, 475 (noting that the appellant had authority to hire and fire "with the approval of" his bosses).

Appellant next challenges, correctly, the factual finding that his father "worked at Harold's Market [only] a couple of days a week for a couple of hours each time." This statement is taken from the affidavit of Ms. Biltz. However, Appellant testified that his father worked at Harold's Market "daily" for a total of 25-30 hours per week, and that Ms. Biltz was "incorrect."

Although the magistrate did not construe this disputed fact in the light most favorable to Appellant, the error is harmless. The magistrate recognized that Appellant's father may have also been a "responsible person" under § 6672(a). Review of the magistrate's opinion does not indicate that the number of hours worked by the father was a materially determinative factor in that court's ultimate conclusion.

Lastly, Appellant criticizes the magistrate's findings that tax liens were in place as to *Harold's* Market in early 1996 and that Appellant "personally borrowed tens of thousands of dollars to pay Harold's Market's delinquent payroll taxes and other debts." This information is found in Ms. West's affidavit. However, Appellant submitted the affidavit of a title professional who stated that the earliest tax lien placed on Harold's Market was dated June 20, *1997* - three months after the business closed. As for the use of his personal funds, Appellant offered conflicting testimony. He testified that personal funds were used only to satisfy the tax debts of *Bob's* Market, and that he was "not aware of" any

*Harold's* Market tax debts at the time of his personal loan.  However, he subsequently admitted that he did use, *inter alia*, "personal accounts" and "personal assets" to satisfy the delinquent 1996 tax debts of *Harold's* Market.  Again, Appellant may not create a genuine issue of material fact merely by contradicting his own testimony.  *See Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).

Therefore, the magistrate erred only in finding that there were tax liens on Harold's Market in early 1996.  This error is harmless.  Taking that disputed fact in the light most favorable to Appellant does not create a genuine issue of material fact as to responsibility.

As cited by the magistrate, Appellant was the treasurer and store manager of Harold's Market.  *See Gephart*, 818 F.2d at 473 (considering officer status and corporate duties).  As cited by the magistrate, Appellant had check writing authority and could hire and fire employees.  *See id.*

Most importantly, and again as cited by the magistrate, Appellant had significant authority over the financial affairs of Harold's Market.  He paid creditors.  He applied funds of Harold's Market to satisfy the debts of Bob's Market.  He directed Ms. West and Ms. Biltz to deposit money into the payroll tax account. He applied personal funds to satisfy the debts of Harold's Market.  He reduced inventory and labor costs in response to decreasing revenue.  He monitored expenses to be sure that they stayed below a certain

percentage of total sales, because "that's what the manager is, you got to keep these guidelines."

After his father's death, Appellant participated in the decision to close Harold's Market. In his own words, "I closed the Harold's Sparkle Market" and "I sent" up to $80,000.00 of Harold's Market's inventory to the other family store. "I had to close the place down."

In light of the above, the magistrate did not err in finding an absence of genuine issues of material fact as to Appellant's §6672(a) responsibility. Although he may not have always been the ultimate decision-maker, Appellant certainly exercised a sufficient degree of influence and control over the financial affairs of Harold's Market, specifically pertaining to "disbursements of funds and the priority of payments to creditors." *See Gephart*, 818 F.2d at 473.

## B. Willfulness

A responsible person's failure to submit payroll taxes is willful if that person "at least . . . recklessly disregarded facts and known risks that the taxes were not being paid." *Calderone v. United States*, 799 F.2d 254, 260 (6th Cir. 1986). It is not necessary that the responsible person demonstrated fraudulent intent or evil motive. *Id.* at 259 (citation omitted).

Appellant again attacks various factual findings by the magistrate as to his willfulness. Each argument is without merit.

Appellant criticizes the magistrate's findings: (1) that he was involved in the 1997 transfer of inventory from Harold's Market to Bob's Market; and (2) that he had the authority to ensure that the taxes were submitted after his father's death. He argues that these matters were within the exclusive control "of estate attorneys and the Executrix Kathleen Harold."

Appellant's position is, however, inconsistent with his deposition testimony. He testified that he participated in the "joint decision" to close Harold's Market. He stated that "I" closed the store and "I" transferred up to $80,000.00 in assets. Appellant's vague statement that he was at some subsequent point in time "blinded from the estate" notwithstanding, there is no genuine issue of material fact as to his involvement in the inventory transfer or his continuing authority to direct payment of the creditors of Harold's Market.

Appellant next argues that the magistrate erred in finding that he "received liquidation funds subsequent to receiving notices from the IRS and did not use these funds to pay trust fund taxes[.]" Appellant now states that he "did not receive funds from the liquidation of the store." His deposition testimony, however, indicates otherwise.

> Q: So you liquidated Harold's Sparkle Market . . . and you received approximately 60 to $80,000?

A: Right.

Further, Ms. West's uncontroverted affidavit states that "[a]fter Harold's Market closed, John Harold told me that he liquidated the store and sold the inventory, fixtures, etc. and received funds from the liquidation." Whether or not Appellant personally retained any of that money is irrelevant.

Lastly, Appellant argues that the magistrate erred in concluding that he "was aware of Harold's Market's prior payroll tax problems" yet, at a minimum, "acted with reckless disregard as to whether such taxes were being paid." At his deposition, Appellant at times denied such knowledge. At other times, however, he admitted such knowledge. Again, a non-movant may not create a genuine issue of material fact merely by contradicting himself. *See Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).

Appellant knew that Harold's Market's payroll tax deposits were sometimes late. Because of prior problems at Bob's Market, he understood the importance of submitting payroll taxes. He knew that the IRS sends out notices when payroll taxes are not paid, and he admitted receiving and paying such notices. He at times applied "[p]ersonal accounts, general accounts, anything it took to get them paid[.]" He acknowledged that he was at times "aware that federal tax deposits were not being made[.]"

Ms. West's affidavit further confirms the magistrate's finding that Appellant was aware of Harold's Market's tax problems. Ms. West stated in material part:

> In 1995 and 1996, Robert, Sr. and on some occasions, John Harold, would tell me about the notices they were receiving from the Internal Revenue Service about unpaid payroll taxes for both Bob's Market and Harold's Market. I informed both Robert, Sr. and John, that it was important to pay the payroll taxes. From these conversations in 1995 and 1996, it was clear that both John and Robert, Sr., were aware that their stores were having financial and tax problems.
>
> . . .
>
> . . . After Robert Harold's death and including the time period in which Harold's Market remained open for business, John Harold told me about additional notices he received from the Internal Revenue Service.

When asked whether Ms. West was incorrect, Appellant answered "I don't know" and that he could not say that she was wrong.

Appellant has therefore not demonstrated a genuine issue of material fact as to the "willfulness" of his failure to submit withholding taxes. He knew that tax deposits and payments were a problem at Harold's Market. Despite being a person responsible for the submission of those payments, and despite personally making such payments in the past, Appellant by his own admission "did nothing" to ensure that the IRS was in fact fully paid for the last two quarters of 1996 and the first quarter of 1997 - even though he generated more than enough liquidation proceeds to pay the bill. Instead, he "assumed" that others would take care of it.

"[O]ne who possesses significant control over the company's financial affairs may not escape liability by delegating the task of paying over the taxes to someone else." *Kinnie v. United States*, 994 F.2d 279, 284 (6th Cir. 1993). The fact that an individual does

not always exercise his powers does not absolve him of responsibility for his failure to act. *Id.* Reckless disregard of facts and known risks - and thus "willfulness" - exists when a responsible officer attempts to "immunize himself from the consequences of his actions by wearing blinders which will shut out all knowledge of the liability for and the nonpayment of [the] withholding taxes." *Calderone v. United States*, 799 F.2d 254, 260 (6th Cir. 1986) (citation omitted).

## VI. *Conclusion*

There is no genuine issue of material fact as to whether Appellant was a "responsible person" who acted "willfully." He is thus personally liable under 26 U.S.C. § 6672(a) for the unpaid withholding taxes of Harold's Sparkle Market. Although the magistrate in some instances failed to resolve disputed issues of fact in Appellant's favor, those errors were immaterial and harmless. The judgment of the district court is AFFIRMED.