# United States Court of Appeals

## For the First Circuit

No. 00-2478

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff, Appellee,

v.

UNIÓN INDEPENDIENTE DE LA AUTORIDAD DE ACUEDUCTOS Y
ALCANTARILLADOS DE PUERTO RICO,

Defendant, Appellant,

AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS DE PUERTO RICO,

RULE 19 Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

---

Before

Boudin, Chief Judge,
Kravitch,[*] Senior Circuit Judge,
and Torruella, Circuit Judge.

---

Marcos A. Ramírez-Lavandero, with whom Ramírez Lavandero, Landrón
& Vera and Eduardo A. Vera-Ramírez, were on brief for appellant.
Susan L.P. Starr, Attorney, with whom Gwendolyn Young Reams,
Acting Deputy General Counsel, Philip B. Sklover, Associate General
Counsel, and Vincent J. Blackwood, Assistant General Counsel, were on
brief for appellee Equal Employment Opportunity Commission.
Roberto Ariel Fernández, with whom Lespier & Muñoz-Noya, were on
brief for appellee Autoridad de Acueductos y Alcantarillados.

---

[*]  Of the Eleventh Circuit, sitting by designation.

February 4, 2002

**TORRUELLA, Circuit Judge.** The appellant, a labor organization, challenges the district court's entry of summary judgment in favor of the Equal Employment Opportunity Commission ("EEOC") on a claim of religious discrimination. Because we conclude that the record evidence reveals a disputed issue of fact with respect to an element of the EEOC's prima facie case, we reverse.

## I. BACKGROUND

In accordance with ordinary summary judgment protocol, we recite only the undisputed facts, unless otherwise noted.

### A. Events leading to the claim of discrimination

David Cruz-Carrillo ("Cruz") is a member of the Seventh-Day Adventist Church who claims that the tenets of his religion prohibit him from joining a labor organization. Cruz was hired by the Autoridad de Acueductos y Alcantarillados of the Commonwealth of Puerto Rico ("AAA") as a temporary employee in 1986. When he applied for employment with AAA, he never disclosed that his religious beliefs forbid him from becoming a member of a labor organization. However, his application for employment at AAA reveals that Cruz attended Seventh-Day Adventist schools and graduated from a Seventh-Day Adventist college.

Defendant Unión Independiente de la Autoridad de Acueductos y Alcantarillados ("UIA" or "Union") is a labor organization created in accordance with the Puerto Rico Labor Relations Act, 29 L.P.R.A. §§ 61-

76. UIA represents several categories of employees, including operations and maintenance workers of AAA.[1] UIA maintained a Collective Bargaining Agreement (CBA) with AAA that contains a union security clause, pursuant to which all permanent employees of the appropriate bargaining unit must belong to the Union.

On December 5, 1988, Cruz became a permanent employee of AAA. He was given written notification of the conditions under which he would be employed, including his obligation to join UIA and pay union dues. According to UIA, Cruz did not state his objection to union membership outright at that time. Instead, he objected only to specific union practices, each of which UIA contends it was willing to accommodate. For example, Cruz objected at various points to attending Saturday union meetings, joining union demonstrations or strikes, taking the Union's loyalty oath, and paying union dues. Through a series of correspondence, meetings, and administrative procedures, UIA expressed its willingness to exempt Cruz from Saturday meetings and public strikes or picketing, to paraphrase its loyalty oath to an affirmation, and to transfer his dues to a nonprofit organization (but retain the share used to pay his fringe benefits). Only after Cruz rejected these proposals, contends UIA, did he assert his objection to union membership in any form. Cruz disputes this version of events and

_____

[1] Since the UIA represents government employees, its dealings with AAA are not governed by the National Labor Relations Act, 29 U.S.C. §§ 151-169.

maintains that his opposition to union membership was steadfast and unqualified.

On March 27, 1991, the Board of Directors of UIA initiated disciplinary proceedings against Cruz for his refusal to become a UIA member. At the end of these proceedings, UIA requested that AAA suspend Cruz from employment in accordance with the union security clause. Cruz appealed the resolution to the Executive Central Committee of UIA, which affirmed the proposed disciplinary measures. Cruz avers that throughout the course of these proceedings he was declared "persona non grata" by the UIA.

In July 1992, Cruz filed a grievance with the Grievance Committee of the AAA to protest the Union's decision requiring him to join in order to keep his job. The grievance was denied and, on October 11, 1993, AAA discharged Cruz for failing to comply with the union membership requirement.[2] Shortly thereafter, Cruz filed a discrimination complaint with the EEOC.

## B. Proceedings below

---

[2] UIA has not argued that Cruz's resort to the employee grievance procedure precludes the instant lawsuit. Cf. Wright v. Universal Maritime Serv. Corp., 525 U.S. 70 (1999) (holding that general arbitration clause in a collective bargaining agreement did not require employee to use arbitration procedure for alleged violation of federal antidiscrimination law); EEOC v. Waffle House, Inc., No. 99-1823, 2002 WL 46763, at *7-9 (U.S. Jan. 15, 2002) (holding that employee's arbitration agreement does not prevent EEOC from initiating suit against the employer and seeking victim-specific relief).

The EEOC filed a complaint on December 27, 1996, alleging that UIA had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, by failing to provide reasonable accommodation to Cruz's religious beliefs and by causing AAA to terminate Cruz's employment. The complaint sought both monetary and injunctive relief from UIA. The complaint also named AAA as a defendant under Federal Rule of Civil Procedure 19 to ensure that complete relief, including Cruz's reinstatement, was available. AAA then filed a cross-claim against UIA, seeking reimbursement from UIA for any costs or damages AAA might be ordered to pay pursuant to the court's resolution of the Title VII claims.[3]

The EEOC moved for summary judgment as to liability, arguing that the undisputed evidence established that, after Cruz informed the UIA of his religiously based opposition to union membership, UIA secured his discharge from employment under the union security clause,

---

[3] The collective bargaining agreement between UIA and AAA contained a provision mandating that UIA will indemnify AAA for any liability the employer may incur due to the enforcement of the union security clause. This appeal does not require us to pass on the sticky question of whether such agreements are enforceable as a matter of public policy. Compare Stamford Bd. of Ed. v. Stamford Ed. Ass'n, 697 F.2d 70, 72-75 (2d Cir. 1982) (holding that indemnification clauses in collective bargaining agreements which purport to relieve public employers from liability for violations of federal constitutional and civil rights are void as against public policy), and Weaver v. Univ. of Cincinnati, 970 F.2d 1523, 1536-38 (6th Cir. 1992) (same), with Hohe v. Casey, 956 F.2d 399, 411-12 (3d Cir. 1992) (upholding indemnity agreement providing that union would hold public employer harmless on any and all claims, suits, orders, or judgments against employer as a result of action taken with respect to union security clause).

and failed to present evidence demonstrating that accommodating Cruz's religious beliefs would cause UIA undue hardship. UIA opposed the EEOC's motion on the ground that there remained disputed issues of fact with regard to the prima facie case of discrimination. UIA also filed its own motion for summary judgment.[4] On December 14, 1998, the district court granted the EEOC's motion for partial summary judgment and denied UIA's motion. See EEOC v. Unión Independiente de la Autoridad de Acueductos y Alcantarillados, 30 F. Supp. 2d 217 (D.P.R. 1998).

On September 26, 2000, the district court ruled on the remaining issue of damages, awarding the plaintiff $133,136.42 "in compounded prejudgment interest and backpay." The court entered judgment on October 10, 2000, ordering that "the case be dismissed." On the same day, the EEOC filed a motion under Federal Rule of Civil Procedure 59 to vacate the judgment and to enter judgment "for injunctive relief in addition to the back pay previously awarded." On October 24, while the EEOC's motion was still pending, UIA filed its notice of appeal from the October 10 judgment. On November 14, 2000, the district court entered an order agreeing with the EEOC that

---

[4] UIA argued that it was entitled to summary judgment on the grounds that it had indisputably made a reasonable accommodation for each of Cruz's objections to certain membership requirements, that Cruz's proposed accommodation of an exemption from membership was unreasonable and an undue burden, and that the religious accommodation provisions of Title VII violate the First Amendment's Establishment Clause. UIA has also pressed these arguments in this appeal.

injunctive relief should be added to the damages award previously ordered.  The court entered an "Amended Judgment Nunc pro Tunc," ordering Cruz's reinstatement in his former or equivalent position and an injunction forbidding UIA from discriminating on the basis of religion or retaliating against any employee for filing a charge on the basis of religion.  UIA did not file a separate notice of appeal following the entry of the amended judgment.

II.  ANALYSIS

A.  Jurisdictional issues

The EEOC attempts to short-circuit UIA's appeal from the outset by pressing two challenges to our jurisdiction.  Though we find neither challenge persuasive, we briefly address these threshold issues before moving to the merits of the appeal.

The EEOC first draws our attention to timing of UIA's notice of appeal.  UIA filed its notice after the EEOC filed its Rule 59 motion, but before the district court acted upon it.  Stating "it is not clear" that we have jurisdiction over this appeal under these circumstances, the EEOC seems to intimate that UIA's notice was nullified by the EEOC's subsequent filing of a Rule 59 motion.  This argument is simply anachronistic, invoking a rule followed under the pre-1993 version of the Federal Rules of Appellate Procedure.  See Fed. R. App. P. 4(a)(4) (1988) (superseded) ("A notice of appeal filed before the disposition of [a motion under Rule 59] shall have no effect"); Osterneck v. Ernst & Whitney, 489 U.S. 169, 177 (1989) (holding that notice of appeal filed during pendency of Rule 59 motion was ineffective to confer appellate jurisdiction).  Under the version of Rule 4 currently in effect,

> [i]f a party files a notice of appeal after the court announces or enters a judgment -- but before it disposes of [a motion under Rule 59] -- the notice becomes effective to appeal a judgment or order, in whole or in part, when the order

> disposing of the last such remaining motion is
> entered.

Fed. R. App. P. 4(a)(4)(B)(i) (1998). The newer rule eliminates the

prior rule's procedural "trap for an unsuspecting litigant who files a

notice of appeal before a posttrial motion or while a posttrial motion

is pending." Fed. R. App. P. 4, Advisory Committee Notes (1993).

UIA's notice of appeal therefore properly invokes our jurisdiction,

notwithstanding the EEOC's later motion under Rule 59.

The EEOC also suggests that we lack appellate jurisdiction

because the district court's October 10, 2000, judgment designated in

UIA's notice of appeal does not reflect the finding of liability in the

district court's September 26, 2000, opinion and order. This argument

is without merit. We have "uniformly held that a notice of appeal that

designates the final judgment encompasses not only that judgment, but

also all earlier interlocutory orders that merge in the judgment."[5] See

John's Insulation, Inc. v. L. Addison & Assocs., 156 F.3d 101, 105 (1st

Cir. 1998). The October 10 order was accompanied by a docket entry

ordering the case closed; this entry of judgment clearly disposed of

---

[5] We do not, however, have jurisdiction to entertain any challenges to
the district court's modification of the judgment in response to the
EEOC's Rule 59 motion. See Fed. R. App. P. 4(a)(4)(B)(ii) (requiring
party to amend notice of appeal in order to challenge orders disposing
of motions under Rule 59). No such challenge appears to be asserted by
UIA.

the entire case.[6] <u>See generally</u> <u>Catlin</u> v. <u>United States</u>, 324 U.S. 229, 233 (1945) (stating that an appealable final decision generally is one which "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment").  UIA's appeal from the district court's ruling of October 10, 2000, therefore supports review of the earlier orders.

## B.  Title VII

Having dispensed with the EEOC's jurisdictional arguments, we now turn to UIA's argument that the district court erred in granting summary judgment in favor of the EEOC on the issue of liability under Title VII.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Barbour</u> v. <u>Dynamics Research Corp.</u>, 63 F.3d 32, 36 (1st Cir. 1995) (quoting Fed. R. Civ. P. 56(c)).  The record evidence must be construed "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." <u>Feliciano de la Cruz</u> v. <u>El Conquistador Resort & Country Club</u>, 218 F.3d

---

[6] Evidently, this was also the EEOC's understanding, since it filed its Rule 59 motion in response to the court's October 10, 2000, order.  <u>See</u> Fed. R. Civ. P. 59(e) (providing for motions to alter or amend a judgment).

1, 5 (1st Cir. 2000).  Where, as is the case here, the party moving for summary judgment bears the burden of proof on an issue, he cannot prevail "unless the evidence that he provides on that issue is conclusive."  Torres-Vargas v. Santiago-Cummings, 149 F.3d 29, 35 (1st Cir. 1998) (emphasis added); see also Calderone v. United States, 799 F.2d 254, 258 (6th Cir. 1986) (explaining that if a summary judgment movant has the burden of proof, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party") (citation and emphasis omitted); Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986) ("[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor.") (emphasis in original).  We review the district court's ruling on summary judgment de novo.  Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 33 (1st Cir. 2001).

        Title VII forbids a labor organization "to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his . . . religion . . . ."  42 U.S.C. § 2000e-2(c)(1).  The statute defines the term "religion" to include: "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to

-12-

an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." Id. § 2000e(j).[7] Thus, in general terms, Title VII requires employers and labor organizations to accommodate, within reasonable limits, the bona fide religious beliefs and practices of employees.

In order to establish a prima facie case of religious discrimination based on a failure to accommodate, the plaintiff must show that "(1) a bona fide religious practice conflicts with an employment requirement, (2) he or she brought the practice to the [Union's] attention, and (3) the religious practice was the basis for the adverse employment decision." EEOC v. United Parcel Serv., 94 F.3d 314, 317 (7th Cir. 1996); see also Seaworth v. Pearson, 203 F.3d 1056, 1057 (8th Cir.) (per curiam), cert. denied, 531 U.S. 895 (2000). Once the plaintiff has established this prima facie case, the burden shifts to the union to show that it made a reasonable accommodation of the religious practice or show that any accommodation would result in undue hardship. Seaworth, 203 F.3d at 1057; Tiano v. Dillard Dep't Stores, Inc., 139 F.3d 679, 682 (9th Cir. 1998).

---

[7] Read literally, Title VII addresses only the obligation of an "employer" to accommodate an employee's religious beliefs and observances. However, courts have uniformly imposed upon labor organizations the same duty to provide reasonable accommodations. See, e.g., Lutcher v. Musicians Local 47, 633 F.2d 880, 884 (9th Cir. 1981). We follow the same approach here.

UIA argues that the district court erroneously granted summary judgment where there remained disputed issues of fact with respect to the question of whether Cruz's objection to union membership was the product of a "bona fide religious belief," an element of the claim for which the EEOC bears the burden of proof. In support of this argument UIA points to record evidence tending to show that Cruz has, on more than a few occasions, taken actions that are at odds with his professed faith.

The requirement that the employee have a "bona fide religious belief" is an essential element of a religious accommodation claim. Title VII does not mandate an employer or labor organization to accommodate what amounts to a "purely personal preference." Vetter v. Farmland Indus., Inc., 120 F.3d 749, 751 (8th Cir. 1997). In order to satisfy this element, the plaintiff must demonstrate both that the belief or practice is religious and that it is sincerely held. See Redmond v. GAF Corp., 574 F.2d 897, 901 n.12 (7th Cir. 1978); cf. also Hager v. Sec. of Air Force, 938 F.2d 1449, 1454 (1st Cir. 1991) (noting similar test for determining whether an applicant is entitled to an exemption from military service as a conscientious objector).

As noted above, Title VII's capacious definition of "religion" includes "all aspects of religious observance and practice, as well as belief . . . ." 42 U.S.C. § 2000e(j); see also 29 C.F.R. § 1605.1 ("[R]eligious practices . . . include moral or ethical beliefs

as to what is right and wrong which are sincerely held with the strength of traditional religious views."). Religious beliefs protected by Title VII need not be "acceptable, logical, consistent, or comprehensible to others . . . ." Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 714 (1981). The statute thus leaves little room for a party to challenge the religious nature of an employee's professed beliefs. Plus, in this case, the religious foundation of the Seventh-Day Adventist faith's opposition to union membership has long been recognized in the opinions of this court and those of our sister circuits. See Linscott v. Millers Falls Co., 440 F.2d 14, 15-16 (1st Cir. 1971); see also McDaniel v. Essex Int'l, Inc., 696 F.2d 34, 37 (6th Cir. 1982); Tooley v. Martin-Marietta Corp., 648 F.2d 1239, 1241 (9th Cir. 1981); Nottelson v. Smith Steel Workers D.A.L.U. 19806, 643 F.2d 445, 448 (7th Cir. 1981). The religious nature of Cruz's professed belief therefore cannot seriously be disputed, nor has UIA mounted such a challenge.

Yet, "[w]hile the 'truth' of a belief is not open to question, there remains the significant question of whether it is 'truly held.'" United States v. Seeger, 380 U.S. 163, 185 (1965). The element of sincerity is fundamental, since "if the religious beliefs that apparently prompted a request are not sincerely held, there has been no showing of a religious observance or practice that conflicts with an employment requirement." EEOC v. Ilona of Hungary, Inc., 108

-15-

F.3d 1569, 1575 (7th Cir. 1997). The finding on this issue generally will depend on the factfinder's assessment of the employee's credibility. See id.; Nottelson, 643 F.2d at 454. Credibility issues such as the sincerity of an employee's religious belief are quintessential fact questions. As such, they ordinarily should be reserved "for the factfinder at trial, not for the court at summary judgment." Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 49 (1st Cir. 1999); see also 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2726, at 446 (3d ed. 1998) ("Clearly, if the credibility of the movant's witnesses is challenged by the opposing party and specific bases for possible impeachment are shown, summary judgment should be denied and the case allowed to proceed to trial") (footnote omitted).

In this case, UIA has by no means conceded that Cruz's opposition to union membership was the product of a sincerely held belief. Instead, it has adduced specific undisputed evidence of conduct on Cruz's part that is contrary to the tenets of his professed religious belief. For example, there is record evidence that Cruz lied on an employment application; that he is divorced; that he took an oath before a notary upon becoming a public employee; and that he works five days a week (instead of the six days required by his faith). Evidence tending to show that an employee acted in a manner inconsistent with his professed religious belief is, of course, relevant to the

-16-

factfinder's evaluation of sincerity.  See Philbrook v. Ansonia Bd. of Ed., 757 F.2d 476, 482 (2d Cir. 1985), aff'd on other grounds, 479 U.S. 60 (1986).  UIA also points to disputed evidence that, when viewed in the light most favorable to UIA, shows that the alleged conflict between Cruz's beliefs and union membership was a moving target: at first, Cruz objected only to certain membership requirements, and he only voiced his opposition to any form of union membership after UIA agreed to accommodate him with respect to each practice he had identified earlier.  Such evidence, if credited by the factfinder, could also bear on the sincerity of Cruz's beliefs.[8]  We therefore conclude that UIA raised a triable issue of fact, making summary judgment inappropriate.

To be sure, assessing the bona fides of an employee's religious belief is a delicate business.  On the one hand, the defendant is entitled to hold the plaintiff to his burden, making it "entirely appropriate, indeed necessary, for a court to engage in analysis of the sincerity of someone's religious beliefs . . . ."  Protos v. Volkswagen of Am., Inc., 797 F.2d 129, 137 (3d Cir. 1986) (quoting Philbrook, 757 F.2d at 481).  On the other hand, "[s]incerity analysis is exceedingly amorphous, requiring the factfinder to delve into the [employee's] most veiled motivations and vigilantly separate

_____

[8] Though, viewed differently, such evidence might simply reflect an evolution in Cruz's religious views toward a more steadfast opposition to union membership.

the issue of sincerity from the factfinder's perception of the religious nature of the [employee's] beliefs." Patrick v. LeFevre, 745 F.2d 153, 157 (2d Cir. 1984). Thus, at trial the court must be careful in separating the verity and sincerity of an employee's beliefs in order to prevent the verdict from turning on "the factfinder's own idea of what a religion should resemble." Philbrook, 757 F.2d at 482 (quoting L. Tribe, American Constitutional Law § 14-11, at 861 (1979)). We believe that a jury, acting under proper instructions from the trial judge, is fully capable of evaluating the parties' evidence and making the appropriate factual determination.[9]

### III. CONCLUSION

Because we conclude that the district court erroneously granted summary judgment with regard to the element of a bona fide religious belief, we decline to address UIA's remaining arguments on appeal and express no view as to their merits.

**Reversed**.

---

[9] While the record does not directly disclose whether the parties intended for the case to proceed to a jury trial or a bench trial, the EEOC stated at oral argument that its usual practice is to try cases before a jury. Cf. Civil Rights Act of 1991, Pub. L. 102-166, § 102, 105 Stat. 1071 (1991) (codified at 42 U.S.C. § 1981 (a)) (providing for jury trials in Title VII actions).