POWERS LAW OFFICES, PC, individually and on behalf of all others similarly situated, Plaintiff

v.

CABLE & WIRELESS USA, INC., Defendant.

No. CIV.A. 99–12007–EFH.

United States District Court,
D. Massachusetts.

July 15, 2004.

A.J. De Bartolomeo, Girard Gibbs & DeBartolomeo LLP, Daniel C. Girard, Girard Gibbs & DeBartolomeo LLP, San Francisco, CA, Edward K. O'Brien, O'Brien Law Firm, P.C., Manchester, NH, Patrick J. Stueve, Steve Helder Siegel, Kansas City, MO, Theodore M. Hess–Mahan, Shapiro Haber & Urmy LLP, Thomas G. Shapiro, Shapiro Haber & Urmy LLP, Boston, MA, for Powers Law Offices, P.C., Plaintiff.

George A. Berman, Peabody & Arnold LLP, Nicholas J. Nesgos, Posternak, Blankstein & Lund, Boston, MA, for Cable & Wireless USA, Inc., Defendant.

### *MEMORANDUM AND ORDER*

HARRINGTON, Senior District Judge.

This case comes before the Court on a Motion for Summary Judgment by Defendant Cable & Wireless USA, Inc. ("C & W") on the claims of the Plaintiff Powers Law Office ("Powers") and the claims of

the class which Powers represents. For the reasons set forth below, the Court grants C & W's motion as to claims which stem from invoices dated prior to August 13, 1999 and denies C & W's motion as to claims which stem from invoices dated on or after August 13, 1999.

## I. BACKGROUND

C & W, a District of Columbia corporation and the American subsidiary of Cable & Wireless PLC, provides various intrastate and interstate telecommunications telephone services, including long distance service. The Federal Communications Act of 1934 ("the Communications Act"), 47 U.S.C. § 151 *et seq.*, regulates the long distance operations of C & W. Section 203(a) of the Act requires that C & W file a schedule with the Federal Communications Commission setting forth all rates and charges for its service. This schedule is commonly referred to as C & W's "tariff."

C & W is a facilities-based interexchange carrier ("IXC"); consequently, customers access its services by placing phone calls using the lines of their local exchange carrier ("LEC"). The LEC routes customers' calls to C & W, the IXC, which then connects them to their intended recipients via its long distance service. During the period at issue, federal regulations under the Communications Act permitted the LEC to collect a fee from the IXC for routing calls to the IXC; this fee is called a Pre–Subscribed Interexchange Carrier Charge ("PICC"). 47 C.F.R. § 69.153. IXCs are permitted to pass this fee along to customers, *id.*, and C & W chose to do so during the periods relevant to this dispute. Thus the tariffs C & W filed with the FCC during this period include PICCs.

In sum, Powers alleges that C & W collected PICCs in amounts greater than authorized by its tariffs. On behalf of itself and other similarly situated C & W customers, Powers brought suit in this Court on September 28, 1999. Over three years later, on October 29, 2002, Powers filed an amended complaint comprising one count related to PICC improprieties. On May 29, 2003, this Court granted Powers' Motion for Class Certification, but limited the plaintiff class to:

> all former and current Cable & Wireless USA customers who, during the period beginning March 31, 1998 and ending July 31, 2001 (the "Class Period"), were assessed a Presubscribed Interexchange Carrier Charge by C & W for a telephone line which was not presubscribed to C & W during the period for which the charge was assessed.[1]

The matter is now before the Court on C & W's motion for summary judgment. C & W argues that its tariffs contain a notice provision which required customers to bring billing disputes to its attention within 45 days of the date on the bill ("the 45–day notice provision"). Because the plaintiff allegedly did not comply with this provision, C & W argues that the plaintiff's opportunity to challenge its bills is foreclosed and hence summary judgment should issue.

## II. DISCUSSION

### A. Summary Judgment Standard

The familiar standard for summary judgement applies to this case. Judgment as a matter of law should be granted where the evidence, taken in the light most

---

1. The Court excluded from the plaintiff class C & W customers who were allegedly charged excessive rates on lines that were presubscribed to C & W (the so-called "Excessive Rate" group) because the sole class representative, Powers, did not satisfy the typicality and adequacy requirements as to this group.

favorable to the non-moving party, shows that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Rocafort v. IBM Corp.*, 334 F.3d 115, 119 (1st Cir. 2003); Fed.R.Civ.P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As is typical, the moving party, here C & W, must show that no reasonable juror could return a verdict for the nonmoving party, here Powers. *See Newbanks v. Central Gulf Lines*, 64 F.Supp.2d 1, 4 (D.Mass.1999).

Powers argues that this standard varies based upon which party bears the burden of proof at trial. Powers contends that C & W raises the 45–day notice provision as an affirmative defense and consequently bears the burden to establish "beyond peradventure *all* of the essential elements of the ... defense." Pl. Opp. at 9 (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1193 (5th Cir.1986)). Indeed, when the party moving for summary judgment bears the burden of proof on an issue, that party must come forward with "conclusive" evidence as to that issue. *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 55 (1st Cir.2002) (citations omitted). However, as the citations in the *Union* case make clear, "conclusive" evidence simply means evidence "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Id.* (Citing *Calderone v. United States*, 799 F.2d 254, 258 (6th Cir. 1986)). Thus, the legal standard on summary judgment does not vary based upon which party bears the burden of proof.[2]

**B.** *Filed Rate Doctrine*

C & W was required to file with the FCC a tariff "showing all charges ... and the classifications, practices, and regulations affecting such charges." 47 U.S.C. § 203(a). Because of this statutory requirement, the Filed Rate Doctrine applies to disputes under the tariff. *Am. Tel. & Tel. Co. v. Cent. Office Tel., Inc.*, 524 U.S. 214, 222, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998). The tariff, filed with the F.C.C. "exclusively control[s] the rights and liabilities between" the service provider and customer. *MCI Telecomm. Corp. v. Graham*, 7 F.3d 477, 478 (6th Cir.1993); *see also* 524 U.S. at 222–23, 118 S.Ct. 1956, *Brown v. M.C.I. WorldCom Network Services, Inc.*, 277 F.3d 1166, 1170 (9th Cir. 2002) More specifically, the tariff governs "not only the nature and extent of [the provider's] liability, but also the nature and extent of the [customer's] right of recovery." *N. Am. Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229, 233 (2d Cir.1978). The Filed Rate Doctrine sets forth a "strict" rule that is enforced even when the results "may seem harsh." 524 U.S. at 222–23, 118 S.Ct. 1956.

■ In the present case, the Filed Rate Doctrine presumptively requires this Court to enforce strictly the 45–day notice provision by dismissing claims of members of the plaintiff class who have not complied with it. To avoid this result, Powers argues that the 45–day notice provision is ambiguous when read in the context of surrounding provisions. Unambiguous provisions are, of course, binding, while ambiguous provisions must be construed by the court. *W. Transp. Co. v. Wilson &*

---

**2.** In the present case, C & W pled lack of compliance with the 45–day notice provision as an affirmative defense. Answer to First Amended Complaint at 6. Presently, in an attempt to avoid the burden of proof, C & W contends that compliance with the 45–day notice provision is a "condition precedent" to recovery under the tariff. Given the Court's analysis of the summary judgment standard, it is not necessary to determine which of C & W's positions is legally correct.

*Co.,* 682 F.2d 1227, 1231 (7th Cir.1982) (Posner, J,).[3] Powers observes that the 45–day notice provision follows two other provisions relating to billing inquiries and billing disputes:

> .07 In the case of a billing dispute between the Customer and the Carrier for Service furnished to the Customer which cannot be settled to mutual satisfaction, the Customer can take the following action:

> .071 The Customer may request, and the Carrier will comply with the request, an in-depth review of the disputed amount. The undisputed portion and subsequent bills must be paid on a timely basis or the Service may be disconnected.

> .072 Customer must bring billing inquiries and disputes to the Carriers [sic] attention within 45 days of the invoice date. Failure to do so within this period shall be deemed an admission of the accuracy of the entire contents of the bill, and shall foreclose any opportunity to challenge the accuracy of any portion of that bill at a later date.

While Powers makes several interesting linguistic arguments attempting to inject ambiguity into the 45–day notice provision, this Court refuses to interpret the provision against its plain language. Read most naturally, the permissive language in .07 ("the Customer can take the following action") governs the process set forth in .071. The 45–day notice provision found at .072 sets forth a limitation on when bills may be disputed that is generally applicable.[4] Thus, unless they have complied with the notice provision, Powers and members of the plaintiff class are deemed to admit the accuracy of the entire contents of the bills at issue and are foreclosed from any opportunity to challenge the accuracy of those bills.

Courts have enforced notice provisions such as that in C & W's tariff. The majority of cases arise in situations where telecommunications companies seek to use the provision offensively to collect the full amount due under bills later discovered to be possibly erroneous. In this context, courts have enforced similar notice provisions strictly. *See MCI Telecomm. Corp. v. Best Tel. Co.,* 898 F.Supp. 868, 874–75 (S.D.Fla.1994), *MCI Telecomm. Corp. v. Ameri–Tel, Inc.,* 852 F.Supp. 659, 666 n. 5 (N.D.Ill.1994), *MCI Telecomm. Corp. v. Premium Mktg. Sys.,* No. 91 C 4048, 1992 WL 6693, *2 (N.D.Ill.1992), *MCI Worldcom Inc. v. Tele Tower Inc.,* No. 01 Civ 0255(LAK) 2002 WL 378424, *1 (S.D.N.Y. 2002), *MFS Int'l, Inc. v. Int'l Telcom, Ltd.,* 50 F.Supp.2d 517, 523 n. 14 (E.D.Va.1999).[5]

3. In *Western Transp.,* the plaintiff was a common carrier required by the Interstate Commerce Act to file a tariff with the Interstate Commerce Commission. The Supreme Court has taught that the Filed Rate Doctrine applies equally to tariffs filed both under the Interstate Commerce Act and the Communications Act, which is at issue in the present case. *Am. Tel. & Tel. Co.,* 524 U.S. at 222, 118 S.Ct. 1956.

4. *Powers* correctly cites precedent for the propositions that related tariff clauses must be considered together, *see Christensen v. N. Pac. Ry. Co.,* 184 F.2d 534, 536 (8th Cir. 1950), and that ambiguities in tariffs must be strictly construed against the carrier, *see Komatsu, Ltd. v. States S.S. Co.,* 674 F.2d 806, 811 (9th Cir.1982). However, the plain, unambiguous language of the 45–day notice provision sets forth general and absolute terms which can only be read to apply more broadly than its neighbors.

5. Powers argues that the tariff notice provisions at issue in the cited cases employ more precise language than the 45–day notice provision at issue in the present case. However, the Court does not consider any differences in language to require a different result in the present case. Powers also cites statements regarding its tariff notice provision MCI made

### C. Compliance with the 45–day Notice Provision

C & W argues that summary judgment in this action must be granted because there is no evidence that any member of the plaintiff class who complied with the 45–day notice provision was not refunded any amounts due. The evidence indicates that members of the plaintiff class who contacted C & W received refunds. For example, named plaintiff Powers contacted C & W twice, first on September 13, 1999 and then again on December 14, 1999, to request refunds of $26.30 and $8.60, respectively. Declaration of Andrew J. Morris in Support of Defendant's Motion for Summary Judgment (Morris Decl.), Exh. 9; Pl. Opp. at 21. Billing records indicate that Powers received refunds in these amounts.[6] Morris Decl., Exh. 10 at PLF 00738, PLF 00787. C & W represents to the court that there is no evidence that any class members who contacted C & W

with PICC complaints were not provided all the relief they requested. Def. Mem. at 21. Consequently, any claim these members of the plaintiff class may have had appears to be satisfied.

■ Members of the plaintiff class who did not individually notify C & W of their disputes present a closer question. Powers argues that the filing of the complaint in this action satisfies the 45–day notice provision for all claims of all class members which accrued between August 13, 1999 [7] (45 days prior to the filing of the complaint) through the end of the class period. In other contexts, courts have readily found that the filing of a complaint satisfies notice provisions. *See Taylor v. Domestic Remodeling*, 97 F.3d 96, 97, 100 (5th Cir.1996) (Truth–In–Lending Act); *Cipollone v. Liggett Group, Inc.*, 683 F.Supp. 1487, 1498 (D.N.J.1988) (New Jersey state law).[8] Here, because the tariff

---

in 1999 in submissions to the FCC. However, the Court prefers the interpretation this provision has been given by the courts over statements made by MCI itself in proceedings before the FCC.

**6.** In response, Powers attempts to create an issue of material fact by claiming that "C & W still has not reimbursed, credited or returned the $404.40 in PICC overcharges it collected from Powers from March 31, 1998 through August 17, 2001." Pl. Opp. at 21. However, in its two phone calls to C & W, Powers did not put C & W on notice of $404.40 in overcharges. Powers only disputed the amounts specifically noted above, and C & W refunded these amounts. Thus, to the extent Powers notified C & W of PICC overcharges, it was provided with refunds. To the extent that Powers incurred additional PICC overcharges, it did not comply with the 45–day notice provision as to these charges and its claim for these charges is therefore barred.

**7.** Powers states that this date should be July 13, 1999, 45 days prior to the filing of the complaint on August 28, 1999. Pl. Opp. at 21. However, Powers' dates appear to be in error; the docket in this court indicates that

the complaint was filed on September 28, 1999.

**8.** For further guidance on the question of sufficiency of notice, the Court also looks to cases construing the Miller Act, 40 U.S.C. § 270ff. The Miller Act permits persons who "furnish[ ] labor or material" on certain public construction projects to sue to recover amounts owed them from the performance bond which the Act requires general contractors to obtain. § 270a, 270b, *see U.S. v. George Hyman Constr. Co.*, 131 F.3d 28, 31 (1st Cir.1997). If the supplier does not have a direct contractual relationship with the general contractor, the Act requires the supplier to send "written notice" to the general contractor. *Id.* The First Circuit has recently observed that while adherence to the notice requirement is mandatory, courts allow "informality" as to the precise form of notice, permitting written communications to be supplemented by oral and other written exchanges clarifying that the supplier is seeking payment. *Hyman*, 131 F.3d at 32–33. Given the flexibility the courts employ in construing the statutory notice requirement in the Miller Act, the Court thinks it reasonable to hold

must be strictly enforced, tariff provisions would control as to the manner of notice which a customer must provide. However, the tariff is silent on this point. It merely states that the "[c]ustomer must bring billing inquiries and disputes to the Carriers [sic] attention within 45 days of the invoice date." Because the tariff has been drafted by the carrier, C & W in this case, it must be construed against the carrier. *Komatsu,* 674 F.2d at 811; *MCI Telecomm. Inc. v. T.A. Communications, Inc.,* 40 F.Supp.2d 728, 733 (D.Md.1999). Thus, since the tariff is silent on the manner of notice to be provided, the filing of a class action complaint in Federal District Court must be considered sufficient to put C & W on notice of the PICC charge disputes for invoices dated August 13, 1999 or later.[9]

### III. CONCLUSION

The Court grants C & W's motion as to claims which stem from invoices dated prior to August 13, 1999 and denies C & W's motion as to claims which stem from invoices dated on or after August 13, 1999.

SO ORDERED.

---

that the filing of a complaint satisfies the 45–day notice provision at issue in the present case.

9. Although the 45–day notice provision differs from a statute of limitations in purpose and effect, the Supreme Court has observed that statutes of limitations "are intended to put defendants on notice of adverse claims...." *Crown Cork & Seal Co. v. Parker,* 462 U.S. 345, 353, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). In that context, the court has held that filing a class action complaint tolls the statute of limitations both as to named plaintiffs and as to unnamed class members until the trial court decides the issue of class certification. 462 U.S. at 353–54, 103 S.Ct. 2392 (quoting *Am. Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974)).